IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBIN M.[1],                                                           Case No. 6:25-cv-01385-HL

                Plaintiff,                                     OPINION AND ORDER

      v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

HALLMAN, Magistrate Judge:

Plaintiff Robin M. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her application for Supplemental

Security Income under the Social Security Act. (Pl.'s Opening Br. at 2-7, ECF 9). The district court

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With that standard of review applied, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

Born in 1971, Plaintiff alleges disability beginning April 8, 2007, due to spine damage, back pain, muscle pain, fibromyalgia, chronic headaches, post-traumatic stress disorder ("PTSD"), depression, and anxiety. Transcript of the Administrative Record, ECF 8 ("Tr.") 51-52, 209, 235. Her claim was denied initially and upon reconsideration. On August 8, 2024, a hearing was held before an Administrative Law Judge ("ALJ"), wherein Plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 40-60. On August 27, 2024, the ALJ issued a decision finding Plaintiff not disabled. Tr. 17-33. After the Appeals Council denied her request for review, Plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date. Tr. 19. At step two, the ALJ determined the following impairments were medically determinable and severe: "degenerative disc disease of the thoracic and lumbar spine[.]" *Id*. At step three, the ALJ found Plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 25.

Because she did not establish a presumptive disability at step three, the ALJ continued to evaluate how Plaintiff's impairments affected her ability to work. The ALJ resolved that Plaintiff had the residual function capacity ("RFC") to perform a light work except:

Page 2 – OPINION AND ORDER

> [She] must have the ability to sit or stand at will at the workstation; never climb ladders, ropes, or scaffolds; never balance; occasionally climb ramps or stairs; occasionally stoop, kneel, crouch, and crawl; must avoid even moderate exposure to hazards; and must use a hand-held assistive device to ambulate, but is able to lift and carry up to the exertional limits with the contralateral upper extremity.

Tr. 26.

At step four, the ALJ determined Plaintiff has no past relevant work. Tr. 32. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy Plaintiff could perform despite her impairments. Tr. 33.

## DISCUSSION

This case hinges exclusively on how the ALJ evaluated the medical opinion of John Allcott III, M.D. Specifically, Plaintiff argues the ALJ harmfully erred by not "directly address[ing] Dr. Allcott's opinion that [Plaintiff] should be limited to sedentary exertion." Pl.'s Opening Br. at 5. The Court disagrees.

**(1)**    *John Allcott III, M.D.* Dr. Allcott is Plaintiff's treating physician who has been seeing her for twelve years. Tr. 851. In his 2024 opinion, Dr. Allcott indicated that Plaintiff's medical conditions include "chronic back pain syndrome, depressive disorder, central pain syndrome, fibromyalgia, [PTSD], hyposomnia, chronic neck pain, dysthymia (depression [and] anxiety)[,] and chronic vertigo." *Id*. Dr. Allcott further indicated that her primary symptoms are chronic back pain, insomnia, vertigo, dizziness, anxiety, and depression. *Id*. After describing the Agency's definition of "sedentary" work, the check-box form asks: "Do you believe [Plaintiff] is limited to performing a sedentary job as defined above, or to an even lesser exertional level?" Tr. 851-52. Dr. Allcott checked the box "yes" and stated that Plaintiff's conditions of chronic PTSD with anxiety and depression, chronic central pain condition with low back pain, and fibromyalgia are responsible for this limitation. Tr. 852. Dr. Allcott further emphasized that Plaintiff would need to

Page 3 – OPINION AND ORDER

be able to "move at will" because she has ongoing chronic pain in all body positions and benefits from being able to move on a continuous basis. *Id*. Dr. Allcott issued a medical recommendation that Plaintiff use a cane to ambulate, as she uses one "all the time" both indoors and outdoors. *Id*. Dr. Allcott concluded that Plaintiff would be impaired "100 [percent] of the time though able to accomplish ADLs" and that she would miss sixteen or more hours per week due to her "complex connection of symptoms" that "render her 100 [percent] disabled from all and any physical [and] cognitive jobs[.]" Tr. 852-53.

The ALJ found Dr. Allcott's medical opinion partially persuasive. Tr. 31. The ALJ explained that his opinion regarding "changing positions from sitting or standing at will" was persuasive because these limitations were supported with an explanation and were consistent with the overall medical record. *Id*. However, the ALJ was unpersuaded by Dr. Allcott's opinion regarding Plaintiff's impairment of attention and concentration, time off-task, frequent absences, and a need to lie down because "Dr. Allcott did not provide an explanation of clinical findings in support that are also reflected in his treatment records, and these levels of limitation are not consistent with the objective evidence as a whole." *Id*. The ALJ overall found that the RFC accounted for Plaintiff's limitations that were supported by the record and specifically stated that "Dr. Allcott's opinion [that Plaintiff] needs to change positions secondary to discomfort and use of a cane for ambulation is supported by his chart records regarding [Plaintiff's] neuropathic thoracic and lumbar pain and observations over time." *Id*.

Plaintiff's only contention is with the ALJ's failure to directly address Dr. Allcott's opinion that she should be limited to sedentary work. Pl.'s Opening Br. at 5. Plaintiff does not directly address the supportability and consistency of the ALJ's findings with respect to Dr. Alcott. *See* 20 C.F.R. § 404.1520c (the regulations require ALJs to evaluate the supportability and consistency of

a medical opinion when assessing its persuasiveness); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors") (quoting 20 C.F.R. § 404.1520c(b)(2)).

Having fully reviewed the record, the Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Allcott's opinion. Furthermore, an ALJ is under no legal obligation to adopt every portion of a provider's medical assessment. Because Plaintiff failed to demonstrate harmful legal error, the Court declines to disturb the ALJ's decision.

(a)     **Supportability.** Throughout his decision, the ALJ noted that Dr. Allcott's medical opinion was unsupported by his own treatment notes. *See* Tr. 22-32. Beginning with Plaintiff's physical health allegations, Dr. Allcott indicated that Plaintiff would be limited to "sedentary" work due to "chronic pain syndrome and central pain syndrome[,]" but the ALJ pointed out those diagnoses "are not established by the objective medical evidence[.]" Tr. 24. Regarding Dr. Allcott's opinion that Plaintiff is limited to sedentary work due to her spinal impairments, the ALJ explained that the record lacks, and Dr. Allcott failed to identify, any clinical signs or findings such as imaging or other evidence of cervical spine changes that would support any cervical spine impairment. Tr. 25, citing Tr. 851-53. Indeed, at the hearing, Plaintiff's counsel "acknowledged that the record does not include any cervical spine imaging[.]" *Id.*, citing Tr. 43-44.

Next, the ALJ stated that "while Dr. Allcott identified the condition of hypersomnia in his July 2024 opinion, [he] did not include any signs or findings to support the diagnosis." *Id*. The ALJ found that Dr. Allcott's assessment regarding Plaintiff's "difficulty sleeping" was based only on a March 2023 chart note reporting sleep disruption due to pain. Tr. 25. The ALJ explained that "the examination findings reflect no related abnormal signs, such that the assessment appears

Page 5 – OPINION AND ORDER

based on [Plaintiff]'s reported symptoms alone." *Id.*, citing Tr. 723-25. The ALJ properly found unpersuasive this part of Dr. Allcott's opinion, because "[i]f a treating provider's opinions are based 'to a large extent' on an applicant's self-reports . . . the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

With respect to Plaintiff's treatment history, The ALJ noted that Dr. Allcott prescribed Percocet 5mg as a remedy to a 2007 epidural complication, which Plaintiff alleges precipitated her disabling impairments. *See* Tr. 51. However, subsequent records demonstrate Dr. Allcott's observation that Plaintiff "continued to obtain benefit with Percocet 5 mg [] and Flexeril." Tr. 29, citing Tr. 412, 418. Indeed, the ALJ observed that both of these medications "have remained stable for several years," providing Plaintiff with ongoing relief and allowed her to maintain daily functioning. Tr. 29, citing Tr. 622, 633, 638, 671, 677, 684, 690, 724, 738, 751, 758, 765, 771, 778. Specifically, the ALJ noted that in "November 2020, she reported she was able to do laundry, dishes, get out of bed, focus on things, take care of her son, and attend to housework." *Id.*, citing Tr. 418. This longitudinal history of effective, stable treatment aligns with the ALJ's discussion of Plaintiff's MRI results. Plaintiff's diagnostic imaging mostly showed mild degenerative changes with disc bulge, mild foraminal stenosis, and a small ventral disc extrusion with mild degenerative changes of the lower lumbar spine. Tr. 28-29, citing Tr. 340-41, 336-39.

Based on this record, the ALJ reasonably concluded that around the time Plaintiff filed her application, her thoracic and lumbar symptoms remained stable, her prescriptions were effective, and she elected to forego physical therapy. Tr. 29, citing Tr. 373-88, 403-14, 534-49, 584-89, 621-39, 667-779. Because Plaintiff fails to provide any argument or evidence disputing these findings, the ALJ's interpretation of the diagnostic imaging and longitudinal treatment record is entirely rational and supported by substantial evidence. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129

S. Ct. 1696, 173 L. Ed. 2d 532 (2009); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

Regarding Plaintiff's allegations regarding her mental health impairments, the ALJ acknowledged Dr. Allcott's opinion that Plaintiff would have "100 percent impairment of attention and concentration during the workday," and that her PTSD, depressive disorder, and anxiety would contribute to her missing work frequently. Tr. 22, citing Tr. 851-53. However, the ALJ found that Dr. Allcott did not identify any observations of Plaintiff supporting this explanation, and that "[Dr. Allcott] is not qualified to assess [Plaintiff]'s mental conditions or functioning. Notably, his chart notes do not reflect that he has referred the claimant for a psychiatric evaluation or neurocognitive testing, as his opinion of that she has significant deficits in her mental functioning would suggest." *Id*. For all of those reasons, the ALJ ultimately did not find Dr. Allcott's opinion regarding Plaintiff's mental functioning persuasive. *See* Tr. 22-24. This was a rational reading of the evidence, and because Plaintiff does not provide any arguments or evidence disputing these findings, she cannot overcome the highly deferential standard of review. *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017) (an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision); *Shinseki*, 556 U.S. at 409-10; *see also Carmickle*, 533 F.3d at 1161 n.2.

**(b)     Consistency.** The ALJ properly found that Dr. Allcott's opinion limiting Plaintiff to sedentary work due to fibromyalgia was inconsistent with the record, as the record contains no medical evidence establishing fibromyalgia as a medically determinable impairment. Tr. 24. The ALJ also combined the persuasive portions of Dr. Allcott and Jason Johnston, PA-C's medical opinions to formulate the RFC, which included the ability to sit or stand at will, and the use of a hand-held assistive device to ambulate. Tr. 31. The ALJ explained that PA Johnston's observations

Page 7 – OPINION AND ORDER

of "normal muscle bulk, tone, and strength, with demonstrated ability to lift, carry, and handle light objects" paired with her "need to use []an assistive device w[hen] rising from a seated position and ambulating for balance and pain, and [her] need to change position due to pain" were consistent with Dr. Allcott's opinion that Plaintiff would need to change positions due to pain and ambulate with a cane. *Id*. This analysis fully satisfies the consistency requirements of 20 C.F.R. § 416.920c(c)(2) and constitutes a rational reading of the evidence. Plaintiff does not provide any evidence undermining the ALJ's conclusions, nor does she demonstrate the ALJ's consideration of this and other evidence was not rational. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

(c)  **Partial Weight and Adoption of Medical Opinions.** Ultimately, Plaintiff's sole argument fails because the ALJ is not required to adopt a particular medical source opinion in full. *See Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" (quoting *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988))). An ALJ may properly adopt only certain portions of a medical opinion, provided that the overall evaluation remains consistent with the record as a whole. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). Such is the case here, as the ALJ found Dr. Allcott's restrictive "sedentary work" assessment was contradicted by his own clinical notes and observations. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (An ALJ may reject a medical provider's opinion that is contradicted by the provider's clinical notes and observations). Because the ALJ's decision is legally sound, it must be affirmed.

Page 8 – OPINION AND ORDER

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Commissioner's decision is AFFIRMED.

DATED this 16th day of June 2026.

ANDREW HALLMAN
United States Magistrate Judge

Page 9 – OPINION AND ORDER